IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

CALVIN PRITCHETT, :

    Plaintiff, :

vs. : CA 18-0396-MU

ANDREW M. SAUL, :
Commissioner of Social Security,
     :
    Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision of the Commissioner of Social Security denying his claims for a period of disability, disability insurance benefits, and supplemental security income. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 22 & 23 ("In accordance with provisions of 28 U.S.C. §636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States magistrate judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.")). Upon consideration of the administrative record, Plaintiff's brief, and the Commissioner's brief,[1] it is determined that the Commissioner's decision denying benefits should be affirmed.[2]

---

    [1]    The parties in this case waived oral argument. (*See* Docs. 21 & 24).

    [2]    Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (Docs. 22 & 23 ("An appeal from a judgment
(Continued)

# I. Procedural Background

On May 2, 2016, Plaintiff "protectively" filed applications for a period of disability, disability insurance benefits, and supplemental security income, alleging disability beginning on May 1, 2011. (*Compare* Tr. 167-174 *with* Tr. 15). Pritchett's claims were initially denied on May 27, 2016 (Tr. 97-113) and, following Plaintiff's June 15 or 21, 2016 request for a hearing before an Administrative Law Judge ("ALJ") (*see* Tr. 105-07), a hearing was conducted before an ALJ on October 12, 2017 (Tr. 28-52). During that hearing, Plaintiff, through counsel, amended his disability onset date to the protective filing date of May 2, 2016 (Tr. 53; *compare id. with* Tr. 15 (recognizing that Pritchett amended his alleged onset date to May 2, 2016)). On January 24, 2018, the ALJ issued a decision finding that the claimant was not disabled and, therefore, not entitled to a period of disability, disability insurance benefits, or supplemental security income. (Tr. 15-23). More specifically, the ALJ proceeded to the fifth step of the five-step sequential evaluation process and determined that Pritchett retains the residual functional capacity to perform those light jobs identified by the vocational expert ("VE") during the administrative hearing (*compare id.* at 22-23 *with* Tr. 46, 48-50 & 52). Plaintiff appealed the ALJ's unfavorable decision to the Appeals Council on February 19, 2018 (*see* Tr. 164-66); the Appeals Council denied Plaintiff's request for review on August 14, 2018 (Tr. 1-3). Thus, the hearing decision became the final decision of the Commissioner of Social Security.

Plaintiff alleges disability due to diabetes mellitus, hypertension, arthritis, obesity, and gout. The Administrative Law Judge (ALJ) made the following relevant findings:

---

entered by a magistrate judge shall be taken directly to the United States court of appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

1.      The claimant meets the insured status requirements of the Social Security Act through December 31, 2016.

2.      The claimant has not engaged in substantial gainful activity since May 2, 2016, the amended alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).

.   .   .

3.      The claimant has the following severe impairments: diabetes mellitus; hypertension; arthritis; obesity; and gout (20 CFR 404.1520(c) and 416.920(c)).

.   .   .

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

.   .   .

5.      After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except the claimant can occasionally push and/or pull foot controls with the left lower extremity; frequently reach[] overhead with the left upper extremity; frequent bilateral handling and fingering; occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching and crawling; never climbing ladders and scaffolds; never work in an environment of unprotected heights or around hazardous moving mechanical parts; the claimant should not operate a motor vehicle for commercial purposes; should have a sit and/or stand option with an ability to alternate sitting, standing and/or walking in 1-hour increments throughout the workday while remaining on task; and would be off task for no more than 10 percent of the time during an 8-hour workday due to bathroom breaks.

.   .   .

6.      The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

.   .   .

3

> 7. The claimant was born on June 23, 1969 and was 4[6] years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).
>
> 8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564 and 416.964).
>
> 9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568 and 416.968).
>
> 10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).
>
> . . .
>
> 11. The claimant has not been under a disability, as defined in the Social Security Act, from May 2, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17, 18, 19, 21, 22 & 23 (emphasis in original)).

## II. Standard of Review and Claims on Appeal

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform h[is] past relevant work; and (5) if not, whether, in light of the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f);

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

*Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to her past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot do his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable—given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that he can perform those light jobs identified by the VE during the administrative hearing—work which admittedly exists in significant numbers in the national economy—is supported by substantial evidence. Substantial evidence is defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole,

taking into account evidence favorable as well as unfavorable to the [Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Sec.*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

On appeal to this Court, Pritchett presents three claims on appeal: (1) the ALJ erred in rejecting the opinion of the treating physician, Dr. Bernita Mims; (2) the ALJ erred in misrepresenting the claimant's testimony regarding his condition and daily activities; and (3) the ALJ erred in failing to include all of his limitations in the hypothetical question to the vocational expert. The Court now considers each claim raised by Plaintiff in turn.

**A.** **<u>Opinion Evidence</u>**. "Weighing the opinions and findings of treating, examining, and non-examining physicians is an integral part of the process for determining disability." *Kahle v. Commissioner of Social Security,* 845 F.Supp.2d 1262, 1271 (M.D. Fla. 2012). In general, "the opinions of examining physicians are given more weight than those of non-examining physicians, treating physicians are given more weight than those of physicians who examine but do not treat, and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists." *McNamee v. Social Security Administration,* 164 Fed.Appx. 919, 923 (11th Cir. Jan. 31,

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

6

2006). In assessing the medical evidence, "[t]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor[,]" *Romeo v. Commissioner of Social Security,* 686 Fed.Appx. 731, 732 (11th Cir. Apr. 24, 2017) (citing *Winschel v. Commissioner of Social Security,* 631 F.3d 1176, 1179 (11th Cir. 2011)), and the ALJ's stated reasons must be legitimate and supported by the record, *see Tavarez v. Commissioner of Social Security,* 638 Fed.Appx. 841, 847 (11th Cir. Jan. 7, 2016) (finding that the "ALJ did not express a legitimate reason supported by the record for giving [the consulting physician's] assessment little weight."); *compare id. with Nyberg v. Commissioner of Social Security,* 179 Fed.Appx. 589, 590-591 (11th Cir. May 2, 2006) (unpublished) (recognizing that an ALJ "'must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error.'").

"When weighing each medical opinion,[5] the ALJ must consider whether the doctor has examined the claimant; the doctor's relationship with the claimant; the medical evidence supporting the doctor's opinion; how consistent the doctor's opinion is with the record as a whole; and the doctor's specialization." *Muniz v. Commissioner of Social Security,* 716 Fed.Appx. 917, 919 (11th Cir. Nov. 27, 2017), citing 20 C.F.R. § 416.927(c) (footnote added); *see also Jacks v. Commissioner, Social Security Administration,* 688 Fed.Appx. 814, 819 (11th Cir. May 23, 2017) ("The ALJ must consider a number of factors

---

[5] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [a claimant's] symptoms, diagnosis and prognosis, what [a claimant] can still do despite impairment(s), and [a claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(1).

7

in determining how much weight to give to each medical opinion, including whether the doctor has examined the claimant, the medical evidence and explanation supporting the doctor's opinion, and how consistent the doctor's 'opinion is with the record as a whole.'" (citations omitted)). "These factors apply to both examining and non-examining physicians." *Huntley v. Social Security Administration, Commissioner,* 683 Fed.Appx. 830, 832 (11th Cir. Mar. 29, 2017) (citations omitted).

> When considering an examining, non-treating medical opinion, "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight [the administrative law judge] will give that opinion. The better an explanation a source provides for an opinion, the more weight [the administrative law judge] will give that opinion." Moreover, "because nonexamining sources have no examining or treating relationship with [the applicant], the weight [the administrative law judge] will give their opinions will depend on the degree to which they provide supporting explanations for their opinions." In addition, "the more consistent an opinion is with the record as a whole, the more weight [the administrative law judge] will give to that opinion."

*Id.* at 832-33 (internal citations omitted; footnote added).

A panel of the Eleventh Circuit has determined that an "ALJ is not required to explicitly address each" of the factors set forth in §§ 404.1527(c) and 416.927(c), *see Lawton v. Commissioner of Social Security,* 431 Fed.Appx. 830, 833 (11th Cir. June 22, 2011), and that the core inquiry is whether "good cause" exists for rejecting particular medical opinions, *see id.* In the treating physician context, as here, good cause has been found to exist "'when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Flowers v. Commissioner of Social Security,* 441 Fed.Appx. 735, 740 (11th Cir. Sept. 30, 2011), quoting *Phillips v. Barnhart,* 357 F.3d 1232, 1240-41 (11th Cir. 2004).

8

With these principles in mind, the undersigned considers whether the ALJ in this case erred in rejecting the opinion of Plaintiff's treating physician, Dr. Bernita Mims. On September 20, 2017, Dr. Mims completed a Clinical Assessment of Pain form and thereon circled responses indicating the following: (1) pain is present to such an extent as to be distracting to adequate performance of daily activities; (2) physical activity (such as walking, standing, bending, etc.) greatly increases pain to such a degree as to cause distraction from task or total abandonment of task; (3) there are significant side effects that may be expected which may limit effectiveness of work duties or performance of everyday tasks (such as driving); and (4) Plaintiff will be "off task" 25% or more of a typical workday (that is, his symptoms will be likely to be severe enough to interfere with the attention and concentration needed to perform even simple work tasks for that period of time each day). (*See* Tr. 391). The ALJ gave little weight to Dr. Mims' opinion. (Tr. 21).

> [I]t is inconsistent with the record. The record shows that [] Dr. Mims' opinion is a recitation of the claimant's subjective symptoms. Although there were periods of joint tenderness, Dr. Mims' overall notes show normal and unremarkable physical examinations. In addition, Dr. Mims[] also notes that the claimant's symptoms from his physical impairments were stable and controlled with his medication.

(*Id.* (internal citations omitted)).

The undersigned reads the ALJ's treatment of Dr. Mims' opinion to be a rejection of that opinion because it was conclusory in nature and was inconsistent with Dr. Mims' own medical records. (*See id.*). The ALJ's reasons are supported by substantial evidence in the record. Dr. Mims' September 20, 2017 opinion consisted of a multiple-choice and yes/no Clinical Assessment of Pain form that offered no room for Dr. Mims to explain how the medical evidence supported her responses. Moreover, as specifically mentioned by the ALJ, Dr. Mims' opinion was merely "a recitation" of Mr. Pritchett's subjective symptoms

9

(Tr. 21; *compare id. with* Tr. 393 ("Paperwork filled out on patient concerning pain and the effects of pain. **Patient stated that pain is distracting and medication does cause drowsiness**. Also BP medications cause increase [in] drowsiness as well. **He stated that he has poor concentration when he is hurting.**" (emphasis supplied)), though the form specifically asked the treating physician for her estimation (and hers alone) of the degree of pain in a particular instance "given the nature of the impairment, the degree to which pain is typically of major concern in that impairment, and the extent to which the patient expresses the presence of pain and requests medication for its relief." (Tr. 391). And, finally, the ALJ is correct that Dr. Mims' medical records and notes-particularly during the period from May 26, 2016, just after Plaintiff's amended onset date, through Dr. Mims' examination on September 20, 2017—principally reveal unremarkable examination findings/medical signs and certainly nothing beyond occasional tenderness/pain (*see, e.g.,* Tr. 385-89 (May 26, 2016 office notes reflect a history of occasional and fluctuating musculoskeletal pain relieved by pain medications; however, musculoskeletal physical examination was grossly normal and there was no extremity edema); Tr. 380-83 (June 28, 2016 office notes reflect a history of occasional and fluctuating musculoskeletal pain relieved by pain medications; musculoskeletal physical examination was normal, save for left knee tenderness, and there was no extremity edema); Tr. 376-79 (August 25, 2016 office notes reflect a history of occasional and fluctuating musculoskeletal pain relieved by pain medications; musculoskeletal physical examination was normal, save for left lower leg pain comment, and there was no extremity edema); Tr. 371-75 (September 26, 2016 office notes reflect a history of occasional and fluctuating musculoskeletal pain relieved by pain medications; musculoskeletal physical examination was normal, save for

pain in both hands, and there was no extremity edema); Tr. 367-370 (November 29, 2016 office notes reflect a history of occasional and fluctuating musculoskeletal pain relieved by pain medications; musculoskeletal physical examination was grossly normal and there was no extremity edema); Tr. 363-66 (January 26, 2017 office notes reflect a history of occasional and fluctuating musculoskeletal pain relieved by pain medications; musculoskeletal physical examination was normal, save for left shoulder tenderness, and there was no extremity edema); Tr. 358-362 (March 14, 2017 office notes reflect a history of occasional and fluctuating musculoskeletal pain relieved by pain medications; musculoskeletal physical examination was normal, save for left elbow tenderness, and there was no extremity edema); Tr. 354-57 (April 17, 2017 office notes reflect a history of occasional and fluctuating musculoskeletal pain relieved by pain medications; musculoskeletal physical examination was normal, save for bilateral knee tenderness, and there was no extremity edema); Tr. 349-353 (May 16, 2017 office notes reflect a history of occasional and fluctuating musculoskeletal pain relieved by pain medications; musculoskeletal physical examination was grossly normal and there was no extremity edema); Tr. 345-48 (June 20, 2017 office notes reflect a history of occasional and fluctuating musculoskeletal pain relieved by pain medications; musculoskeletal physical examination was grossly normal and there was no extremity edema); Tr. 405-08 (July 24, 2017 office notes reflect a history of occasional and fluctuating musculoskeletal pain relieved by pain medications; musculoskeletal physical examination was normal, save for a comment regarding joint pains and stiffness, and there was no extremity edema); Tr. 398-402 (August 23, 2017 office notes reflect a history of occasional and fluctuating musculoskeletal pain relieved by pain medications; musculoskeletal physical examination

was grossly normal and there was no extremity edema) & Tr. 393-97 (September 20, 2017 office notes reflect a history of occasional and fluctuating musculoskeletal pain relieved by pain medications; musculoskeletal physical examination was normal, save for bilateral knee tenderness and a comment about joint pains, and there was no extremity edema)).[6] Based upon the foregoing, the ALJ articulated good cause for discounting Dr. Mims' September 20, 2017 opinion. *See generally Howard v. Commissioner, Social Sec. Admin.,* 762 Fed.Appx. 900, 903-04 (11th Cir. Mar. 8, 2019) (finding the ALJ articulated good cause for discounting the treating physician's opinion, including that the opinion was conclusory, unsupported by clinical or laboratory findings, and was inconsistent with the objective medical evidence; the appellate court specifically noted that the treating doctor's opinion consisted of a multiple-choice clinical assessment of pain form which provided no room for the treating physician to explain how the medical evidence supported his responses, the evidence showed the treating physician rarely examined the claimant or performed clinical testing but, instead, relied mainly on the claimant's subjective reports of pain as a basis for treatment, the treating physician's opinion that physical activity would increase pain was inconsistent with objective evidence of MRIs showing only mild or minor problems, etc.).

    **B.**   **Claimant's Testimony.** Pritchett next contends that the ALJ erred in misrepresenting his testimony regarding his condition and daily activities. In particular, Plaintiff contends that the ALJ misrepresented that his gout was stable with medications

---

[6] Indeed, the examination notes of Dr. Mims are most notable for the dearth of positive objective findings, such as reduced range of motion (of which there are none), muscle atrophy (of which there are none), muscle spasm (of which there are none), motor, sensory or reflex deficits (of which there are none), etc.

and failed to explain how he could perform light work after accepting his testimony that his medications caused drowsiness. And, finally, Plaintiff contends that the ALJ misrepresented the nature of his daily activities in finding that those daily activities were inconsistent with disabling symptoms.

The Eleventh Circuit has consistently and often set forth the criteria for establishing disability based on testimony about pain and other symptoms. *See, e.g., Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991).

> [T]he claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.[7] If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson, supra,* at 1225 (internal citations omitted; footnote added).

In this case, the ALJ clearly recognized that Plaintiff's impairments could reasonably be expected to give rise to the symptoms (e.g., pain, drowsiness, and frequent bathroom breaks) alleged (*see* Tr. 21 ("[T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]")), yet found that his subjective complaints were not entirely credible (*id*. ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of

---

[7] "Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw a reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." SSR 88-13.

these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.")).

And while it is certainly true that the ALJ rejected Plaintiff's testimony that he experiences weekly gout flareups based on record evidence reflecting the gout was stable with medication (Tr. 20), the undersigned finds that rejection supported by the evidence. Plaintiff, of course, cannot "explain away" the record evidence from April 17, 2017 that his gout was stable (Tr. 356) and, therefore, is relegated to arguing that this one notation does not "overcome" the other evidence of record that his gout is a chronic or recurrent problem (*see, e.g.,* Tr. 352 (May 16, 2017 office visit); Tr. 374 (September 26, 2016 office visit); Tr. 383 (June 28, 2016 office visit); Tr. 388 (May 26, 2016 office visit) & Tr. 401 (August 23, 2017 office visit)). The problem with this argument, however, is that even though the descriptions of Plaintiff's gout as chronic or recurrent certainly outnumber the one description of Plaintiff's gout as stable, they do not outnumber the number of times Dr. Mims made no mention (that is, no assessment) whatsoever of gout (*see, e.g.,* Tr. 347 (no mention of gout during June 20, 2017 office visit); Tr. 360-61 (no mention of gout during March 14, 2017 office visit); Tr. 365 (no mention of gout during January 26, 2017 office visit); Tr. 369 (no mention of gout during November 29, 2016 office visit); Tr. 378-79 (no mention of gout during August 25, 2016 office visit); Tr. 396 (no mention of gout during September 20, 2017 office visit) & 407-08 (no mention of gout during July 24, 2017 office visit)). Therefore, any purported misrepresentation regarding Plaintiff's gout as stable versus chronic was harmless inasmuch as the record evidence from Plaintiff's own treating physician, Dr. Mims, as set forth above, refutes Plaintiff's hearing testimony that he experiences weekly gout flareups (Tr. 43). The undersigned reaches this conclusion

because if Plaintiff was experiencing weekly gout flareups, Dr. Mims would have assessed gout on every occasion Plaintiff visited her, which she decidedly did not, and would have included some description of that condition in her notes. Accordingly, the undersigned finds no material misrepresentation by the ALJ regarding Plaintiff's gout and certainly no basis to find that the ALJ erred in discounting Plaintiff's testimony of weekly gout flareups.[8]

Finally, Plaintiff contends that the ALJ misrepresented the nature of his daily activities in finding that those daily activities were inconsistent with disabling symptoms. (Doc. 15, at 8.) The AlJ offered the following comments relative to Pritchett's daily activities:

> [T]he undersigned finds that contrary to allegations of disabling symptoms, the claimant's daily activities are not as limited as one would expect. The record shows that the claimant has severe physical impairments. However, these impairments do not significantly limit his daily functional abilities. For instance, he is able to shop in stores and interacts well with family by sitting during visits. Here, the physical and mental capabilities requisite to perform many of the tasks described above, as well as the social interactions, replicate those necessary to obtain and maintain employment. As such, these activities negate[] the claimant's allegations and instead, support the conclusion reached herein.

---

[8] Plaintiff cryptically notes that the ALJ accepted his testimony that his medications cause drowsiness (Doc. 15, at 8, citing Tr. 20) but failed to explain how he could perform light work with this drowsiness (*see id.*). Certainly, the ALJ recognized that Pritchett described drowsiness as being a side effect from his medication and that the record shows he experiences drowsiness (Tr. 20); however, the ALJ went on to find that despite such drowsiness, Plaintiff can perform still perform light exertional work with a sit, stand and/or walk option and other environmental limitations (Tr. 21; *compare id. with* Tr. 19 (RFC assessment, including that Pritchett can never climb ladders or scaffolds, never work in an environment of unprotected heights or around hazardous moving mechanical parts, and cannot operate a motor vehicle for commercial purposes)), thereby implicitly rejecting any suggestion that this medication side effect would have any impact on his ability to work beyond that reflected in the RFC assessment. This implicit determination is supported by substantial evidence, inclusive of the evidence in the record of Plaintiff's non-compliance with medication (*compare* Tr. 20 *with* Tr. 401) and with the evidence which establishes that he has no problem paying attention and can finish what he starts (e.g., chores, reading and watching a movie) (Tr. 216).

(Tr. 21). According to Plaintiff, the ALJ's comment about shopping fails to take into account Pritchett's full report that he only shops once a month for about 30 minutes (*compare* Doc. 15, at 8 *with* Tr. 214 (reflecting that Plaintiff usually sends his daughter to shop and that he only shops once a month for 30 minutes)) and that his family only visits a couple of times per month and all that is done is sitting around, talking and watching television (*compare* Doc. 15, at 8 *with* Tr. 215).

While the ALJ may have exaggerated the scope of Plaintiff's shopping activities, the same cannot be said of the ALJ's observation regarding Plaintiff's activities when his family members visit him. Indeed, the ALJ's finding that the Plaintiff "interacts well with family by sitting during visits[]" is not only consistent with the description of those bi-monthly visits in the record (*compare* Tr. 21 *with* Tr. 215) but, as well, is consistent with Plaintiff's consistent mantra that he experiences absolutely no problems with sitting and watching television or sitting on the porch (*compare id. with* Tr. 211). And this Court cannot agree with the argument that Plaintiff's activities when his family visits and on a typical day with no visits has no import with respect to Pritchett's ability to function in a competitive work environment, inasmuch as this evidence standing alone supports the ALJ's RFC assessment that Plaintiff can sit, at the very least, in one-hour increments during an 8-hour workday before having to alternate to standing or walking.[9] Moreover, that Plaintiff could "navigate" the social interactions required of competitive work is not

---

[9] Indeed, the Court finds that the evidence of record establishes Plaintiff's ability to sit for longer than one-hour periods before alternating to standing or walking. (*Compare* Tr. 211, 215 & 216 (Pritchett's report that he sits and watches television most of the day and that he can finish watching a movie after starting it) *with, e.g.,* Tr. 345-409 (relevant office notes generated by Dr. Mims or on account of a referral by Dr. Mims reveal no relevant findings impacting Plaintiff's ability to sit)).

only supported by his ability to talk during his bi-monthly visits with family members but, as well, by his more frequent visits with his daughter (*see* Tr. 43 (Plaintiff's testimony that his daughter performs all household chores and implicit suggestion that she cooks his meals)), his report that he gets along well with authority figures (Tr. 217) and his report that he has no problems with paying attention (Tr. 216). So, even excluding any shopping "evidence," when the foregoing information is considered in conjunction with Pritchett's testimony that he can sit and stand for an hour, walk 150 feet and was told by his treating physician to exercise by walking (Tr. 40-41),[10] and the objective medical signs/findings of record,[11] it is clear that Plaintiff's symptoms are not disabling as determined by the ALJ. Stated somewhat differently, the undersigned concludes that any mistaken view of Plaintiff's shopping activities amounts to mere harmless error and does not otherwise undermine the ALJ's correct determination that Plaintiff does not experience disabling

---

[10] Plaintiff's testimony at the administrative hearing that when he tried to walk his legs and knees became swollen (Tr. 40-41) is wholly incredible inasmuch as Dr. Mims not once noted any swelling or edema in Plaintiff's legs or knees (*see, e.g.,* Tr. 347 (no extremity edema); Tr. 351 (no extremity edema); Tr. 356 (no extremity edema); Tr. 360 (no extremity edema); Tr. 365 (no extremity edema); Tr. 369 (no extremity edema); Tr. 373 (no extremity edema); Tr. 378 (no extremity edema); Tr. 382 (no extremity edema); Tr. 388 (no extremity edema); Tr. 395 (no extremity edema); Tr. 400 (no extremity edema) & Tr. 407 (no extremity edema)).

[11] While there is some radiological evidence from August of 2017 showing moderate degenerative arthritic change of the left hip joint (Tr. 403) and questionable small suprapatellar joint effusion of the right knee (Tr. 404), the ALJ's RFC assessment sufficiently accounts for these findings (*compare id. with* Tr. 19 (RFC assessment includes sit and/or stand option, only occasional pushing and/or pulling foot controls with the left lower extremity, only occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, never climbing ladders of scaffolds, and never working around unprotected heights or hazardous moving mechanical parts)), and there is nothing about these radiological findings that would corroborate Pritchett's allegations of disabling pain. Moreover, as alluded to earlier, Dr. Mims' records are devoid of objective medical signs/findings (such as muscle spasm, limited range of motion, muscle atrophy, etc.) that would corroborate Plaintiff's allegations of disabling pain.

symptomatology. Accordingly, the Court **OVERRULES** Plaintiff's second assignment of error.

        C.        **<u>Hypothetical Questions Posed to the Vocational Expert ("VE")</u>**. In Plaintiff's final assignment of error, he contends that the ALJ failed to specifically include all of his limitations in the hypothetical question(s) posed to the VE. In particular, Plaintiff contends that the ALJ failed to specifically include in her hypothetical to the VE that he "would be off task for no more than 10 percent of the time during an 8-hour workday due to bathroom breaks[]" despite the fact that this "limitation" was part and parcel of the ALJ's ultimate RFC assessment. (*See* Doc. 15, at 9-10). There can be little question but that Plaintiff testified during the administrative hearing that before noon every day he has to use the restroom three to four times (Tr. 44) and it is clear that in her RFC assessment, the ALJ specifically determined that Plaintiff "**would be off task for no more than 10 percent of the time during an 8-hour workday due to bathroom breaks**." (Tr. 19 (emphasis in original)). Moreover, the evidence from the administrative hearing establishes that the ALJ initially posed hypotheticals to the VE that contained all of the limitations contained in the ALJ's ultimate RFC assessment, save for the bathroom break limitation (*see* Tr. 46-50), and the VE identified light work as an office helper, garment sorter, and checker (*id.* at 48-49), that admittedly exist in significant numbers in the national economy, that the hypothetical claimant could perform (*see* Doc. 15, at 9-10 (no argument that the jobs identified do not exist in significant numbers in the national economy)). Thereafter, Plaintiff's counsel posed certain questions to the VE (Tr. 50-52), one of which was the following:

> Q . . . If an individual would have to take four unscheduled breaks before noon every day, that eliminates all jobs in the nation and region, would it not?
>
> A Yes, it would. . . . That's excessive nonproductive and off task behavior, and would not be acceptable in the marketplace.

(Tr. 51.) As a follow-up to questioning by Plaintiff's counsel, the ALJ posed the following questions to the VE:

> ALJ: Okay. What's the maximum that's allowable to be off task during an eight-hour workday?
>
> VE: No more than 10 percent.
>
> ALJ: And that's how many minutes?
>
> VE: Well, you know, it's on an hour basis. It would be [no] more than six minutes each hour.
>
> ALJ: Okay. So six minutes per hour.
>
> VE: Yes.

(Tr. 52.)

It is clearly established in the Eleventh Circuit that "[a] vocational expert's (VE) testimony is not substantial evidence in support of the ALJ's determination if the hypothetical questions posed to the VE fail to include all the claimant's impairments." *Henry v. Commissioner of Social Sec.,* 802 F.3d 1264, 1269 (11th Cir. 2015), citing *Wilson, supra,* 284 F.3d at 1227; *see also Stone v. Commissioner of Social Sec.,* 544 Fed.Appx. 839, 842 (11th Cir. Nov. 14, 2013) (per curiam) ("'In order for a [VE's] testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments.'"). It has also become just as established that "questions that 'implicitly account[] for the claimant's limitations' are sufficient to meet this requirement." *Henry, supra,* citing *Winschel, supra,* 631 F.3d at 1180-81.

19

Here, the ALJ both explicitly and implicitly alluded to (and/or accounted for) Pritchett's need to take unscheduled bathroom breaks when she questioned the VE about the maximum time permissible for a worker to be off task during an 8-hour workday and the VE explained that the allowable off-task time is 10% of the day, more specifically, six minutes per hour. (Tr. 52.) This discussion was in the immediate aftermath of the VE's response to a question posed by Plaintiff's counsel which suggested that four unscheduled breaks before noon would eliminate all jobs because that would be excessive off-task behavior. (*Compare id. with* Tr. 51). So, given this additional discussion with the VE, the Court finds the record sufficient to determine that Pritchett could perform the light jobs earlier identified by the VE during the administrative hearing—checker, garment sorter, and office helper—with his need for bathroom breaks. Accordingly, Plaintiff's third assignment of error is **OVERRULED**.

## **CONCLUSION**

In light of the foregoing analysis, it is **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff benefits be affirmed.

**DONE** and **ORDERED** this the 20th day of September, 2019.

s/P. Bradley Murray
**UNITED STATES MAGISTRATE JUDGE**